May it please the court, counsel, I'm Charlie Wiggins here with Tim O'Brien from Pensacola representing the Anderson plaintiffs in this case. This case arises out of the dismissal of course of 47 plaintiffs complaints for products liability in a situation in which the plaintiffs had already complied with the required filing. They had already filed the severed complaints by the time the court ruled. The only issue here was a delay of two to three months after the court established deadline. And there had been no warning in the CMOs that the individual severed complaints might be dismissed. Under these circumstances the dismissal was an abuse of discretion and we'd ask the court to reverse it. Before I dwell on that issue, I'd like to go directly to the court's question about Williams v. Bennett, a recent case under Mississippi products liability law. And I think it's important to put that case in context and the context is that the case is that of remand, of course. And under remand it's the defendants who have the burden of proving that there is diversity jurisdiction in the federal court. Doubtful cases are to be decided in favor of the plaintiff and the issue is to be decided at the time the complaint was filed. Now, when you look at it in that light and you look at Mississippi law, in this case adequate claims were pled against the Mississippi retailers. And I want to talk about the three phases, if you will, of Mississippi law. The original 1993 statute provided that there could be a liability if the manufacturer or seller knew or should have known of the dangerous condition of the product. And we've pointed out in our brief that there are good reasons to interpret that or in the disjunctive. If either the manufacturer or the seller knew, then the re can be liability. Now, the situation changed in 2002 with a statute subsequently repealed. This statute applies as of January 1, 2003. Our case, of course, was filed before that. This statute does not apply. So I'm understanding where you're going. Are you trying to suggest that Williams is not retroactive? I'm suggesting that Williams interpreted the law as it existed under the 2002 statute. And? Beg your pardon? And? And the 2002 statute does not apply to this case. That's what I was trying to... Right. Just so I understand where you're going with your argument. Right. Now, the other thing about Williams is that under the 2002 statute, the retailer could file a motion to show that the retailer, there were no facts and circumstances other than the status as a seller. And in Williams, in fact, that affidavit was filed by the retailer. There was no countervailing affidavit by the plaintiffs. Now, we don't have that in our case. There were no affidavits filed by the defendants, which they could have done quite readily in response to a motion for remand. The law is that to defend against a remand and to show fraudulent joinder, the defendant can file affidavits and the court will consider affidavits. There are no affidavits in this case. And yet the court looked to the law, really the wrong law, and looked to a prior case that the district court itself had decided under the 2002 statute. There's been even another change since that. This 2002 statute is no longer the law. The 2004 statute is now the law and requires actual or constructive notice on part of the retailer. Now, let's suppose that we were to somehow agree that with the defendants that the Williams case applies. Is it your position that the Mississippi complaint does or doesn't give enough notice of the individual retailers? I think it does. It alleges adequate knowledge. One of the allegations is in paragraph 118, and it is rather broad, that the defendants knew or should have known about the published decades-long history of at least 30 case reports, etc. This does not specifically refer to the manufacturers. This refers to all defendants. There was a great deal of evidence or information that we discuss in the complaint that is out there. And some of these retailers are, in fact, pharmacies. They're pharmacy companies. They're not small mom-and-pop operations. They own them. Suppose they're not. Suppose there is a distinction between retailers and manufacturers. You didn't distinguish in many parts of your complaint between retailers and manufacturers. Have you given sufficient notice to the defendants of your cause? The fact that you did not distinguish between the types of defendants, what is your argument that you still gave sufficient notice? Well, I think there's sufficient notice when you refer to all defendants like these paragraphs do. Now, what is the remedy for that? I mean, what are the defendants to do? And I think there's an easy remedy. Under the 2002 statute, it was quite specific. They can file an affidavit on part of the recap that says, I didn't know. I didn't have reason to know. And that's the solution to it. I don't think this is a notice question as much as it is a question of adequate pleading. And when you refer to all defendants like this, you're referring to all of them. This is not an allegation that's tied to a particular defendant. Unless there are other questions about the Mississippi law and the Mississippi cases, I'd like to move on to the issue. Yeah. One of the defendants assert that even so, the fraudulent joinder issue pertains only to 8 out of the 40-plus plaintiffs. And they don't really develop the argument, but I take it what they want to suggest is that because of the Eleventh Circuit's procedural misjoinder principle, that no matter what this Court does with the 8 plaintiffs who have alleged a claim against resident defendants, we shouldn't remand the others. Do you have a response to that? Yes. My response is this. If they had a misjoinder argument to make in response to the remand argument, they should have made it. They didn't make it. And what that argument would raise is quite an interesting issue of what Mississippi law unjoinder is and whether those plaintiffs were properly joined under Mississippi law when the complaint was filed. None of that was raised at the district court level. None of that has been briefed. And so my response to that is that issue really is not here. It just isn't in the case. It never has been raised. Moving on, then, to the dismissal for the delay in filing the individual. Which, of course, would be mooted if you were correct. That is absolutely correct. And what, if you were correct, on the fraudulent joinder issue would the order look like? Well, it would reverse the denial of remand in order that these cases be returned to state court. Reconsolidating the complaints or severed? As to a consolidated complaint, because that motion was filed and the order was made before any of the individually severed complaints were filed. And I think that really the plaintiffs had no choice but to comply with the court's order. Once there was a denial of remand, they had no choice but to file the severed complaints, and that's what they did. All right. Then going on to the dismissal issue under the Malone case. I think that we need to put this dismissal in the context of the whole civil rules and the package of civil rules. And the civil rules, of course, are motivated by a spirit of reaching cases on the merits and not dismissing cases for technical reasons that don't go to the merits. And most of the rules that require or call for some kind of dismissal do so with the express condition that there's kind of a second chance. If your complaint is found inadequate or if a more definite statement is ordered by the court, the rules say you get more time. You can amend that. If you don't do the mandatory. The problem is, for example, with amendment, of course you do. Normally you ask for it. You don't just ignore the time deadline and assume that the district court, particularly in an MDL proceeding, is going to be super generous just on its own. Well, and the reason for that, I would submit, Your Honor, is that your complaint specifically has been reviewed by the court. There's been a motion directed to you. And your complaint has been found individually lacking, and you have been given a specific deadline and a specific order. That's a different situation than a CMO that applies prospectively to all cases coming into the case, coming into court later. Now, and if you look at other situations, discovery, for example, if you don't give the mandatory discovery under Rule 26A, the case doesn't get thrown out. Well, yeah, that's all true. But here you had a court order, and the problem is failure to comply with the court order, which may have been stupid or may have been brilliant. But the point is it was a court order by the Federal district judge who was trying to manage thousands of cases. So your attack really seems to me to go to the rationale behind multidistrict litigation. Well, let me respond directly to that, because I think that when you apply the Malone factors, the five-factor test used by this court, you have to distinguish between the CMO itself and the dismissal for violation of the CMO. Now, the CMO may well be justified by all of the considerations that you mentioned, but the question then becomes, well, is dismissal justified under the circumstances of this case? That's the way the court always looks at these situations. Yes, but you're arguing basically that the order was kind of inappropriate because, after all, you came in later and the actually your complaints differed from those upon which the district judge justified the order. So your attack primarily in substance is against the order, not against a dismissal for violating the order. I have to disagree with you. We have challenged the order and the validity of the way the order is structured. But my primary argument really is not to the order itself. It's to the dismissal. And it's the remedy, and you're arguing there should have been alternative sanctions considered before dismissal. Is that your argument? Well, my argument is that in this situation, you have to look at the facts of our case and evaluate the five Malone factors in light of the way this case comes up and the way this case was disposed of. That's my argument. Now, you might look at the CMO 15 or CMO 15A under the Malone factors and say, well, those orders are perfectly fine under the Malone factors. And that's fine. That's one of the arguments that I make in the brief. But the primary argument, and the one I really want to focus the court on today, is not whether the CMOs were proper or improper. It's that dismissal was improper. Because the CMOs don't say, if you violate this order, if you file these severed complaints late, we're going to dismiss these severed complaints. Would you explain to me how it is that someone appearing in a federal court where the rules, federal rules say that one of the sanctions for failure to obey a court order is dismissal, can just ignore a court order and not seek a protective order, not seek an extension, not seek to explain why that order as crafted shouldn't be applied to your situation? I must say, it's very hard for me to understand the reasoning. So I'd like to hear it from you. I mean, how can a litigant just ignore a federal court order? There are a lot of ways a litigant can ignore a federal court order as a matter of fact. As a matter of fact, a litigant can say, I'm not going to comply with this order. Sure. And be subject to contempt. That's what happened in the Malone case. And be subject to contempt and all sorts of other things. I mean, that's an astonishing statement. But let me finish here. That's what the court – that's what happened in Malone. The court said – the court gave a certain amount of time and the litigant said, I'm not going to comply with that order. There's a second way that a litigant can fail to comply with a court order, and that's through inadvertence or neglect. Now, is that so insulting to the dignity of the court that we would dismiss the case for that? Especially – Well, if it's not excusable, sure. Well, but here, the plaintiffs actually filed the individual subject complaints. They complied with the court order. They're late. That's what we're here talking about today. That's all we're here talking about today. Well, it's like being a little bit pregnant. Just a little bit late. I mean, so what? It wasn't on time. That is why the court has the five factors under Malone. And the first factor is expeditious resolution of the case. Did this delay the resolution of the case? It did not. In fact, the defendants have never pointed out what they were stopped from doing, what anybody was stopped from doing because of this delay. And, in fact, the next thing is control of the docket. And the court has the right to control the docket. Well, the court's docket had been controlled at that point. In fact, the severed complaints had been filed before any motion was brought. Forty of them had been filed before the motion was brought. The others were filed before the ruling was obtained. The third is prejudice. What's the prejudice to the defendants? Nothing. They weren't waiting for anything. They knew who was being sued. The complaint was specific. Every plaintiff was specific as to every defendant. They had, in fact, answered this complaint in Federal court. They had answered. And so they weren't waiting for anything. There were fact sheets. Well, that, of course, just goes to show how easy it would have been to comply. I mean, just cut and paste the paragraph out of the complaint and file the rascal. So, I mean, from not the ease with which it could have been complied with implies disdain for the court order. Your Honor, the point that I'm making is that under the established jurisprudence of this circuit, you don't just say we don't have any established jurisdiction on an MDL proceeding, which is how come we're having this conversation. That's why I'm trying to draw out from you as much as I can about it. Well, if the point is the MDL, the civil rules still apply, and the preference for deciding cases on the merits still applies in an MDL just as it applies in any other case. Just because this case was yanked out of state court and removed to Federal court and then transferred from Mississippi all the way across the country to Seattle doesn't mean that these plaintiffs are not entitled to have their cases adjudicated just as a prisoner would be entitled to have his case adjudicated, just as an employment case should be adjudicated, just under all the same factors. I don't think that no one has really argued that these Malone factors don't apply in an MDL. The defendants haven't argued that. Do they get weighed differently because it's an MDL that looks at the there may be sacrifices to individual plaintiffs in order to maintain order for the greater good of the thousands of others so that everybody, for example, the disciplinary effect or the deterrent effect, if you will, of sanctioning your clients for not complying on time? The district court didn't say that, and I don't, I mean, the fact that there are a lot of cases in MDL, I don't see why that means that these clients, the Anderson plaintiffs, shouldn't have their case resolved under the facts of their case and in light of the same factors that would govern any other case. Counsel, you didn't finish the Malone factors, and I'm back to my original question. One of them is alternative sanctions. Oh, you know, that's an interesting question, Your Honor. I'm sorry I didn't finish that, because that is. I mean, would an alternative sanction have sufficed? There was no need for an alternative sanction. In fact, the separate complaints have been filed. I'm going to reserve what little time I have left for rebuttal. Thank you. Mr. Tottenham. Good morning. May it please the Court. My name is Terry Tottenham. I will argue on behalf of the manufacturers on the removal, remand issue. My colleague and co-MDL liaison counsel, Mr. Sherman, will address the CMO 15 and 15A dismissals. If I may address the questions raised by the Court on removal and remand. First of all, Williams clearly set the law on what is required in a design defect case in Mississippi, and that same element is required in the Product Liability Act in Mississippi for failure to warn. That is some allegation, some basis for showing that the retailer knew of the risk involved in danger to the plant. And why is it that the allegations, general though they are, don't suffice, because the allegations do say that the retailer's pharmacist knew about the danger and failed to warn? First of all, let me, to answer that question, keep in mind that the four non-diverse defendants in this case involves a grocery store, convenience store. Well, I'm not talking about whether it makes sense or whether they actually did know or anything. I think the odds of them knowing are just like less than zero. Well, let me address. Unless they happen to have gone to Yale and read the Yale Daily. But that doesn't matter at this point. The point is what's alleged. And it's a notice pleading state, and they allege knowledge. And it's not totally without basis. I'm just submitting to you for the sake of getting your argument, because they do identify the Yale study and a bunch of other things. Let me address that specifically. And I want to refer you to paragraph 118, which counsel put up here on the screen about the plaintiff's complaint. May I put this back up? Absolutely. We have the. You have paragraph 118 that talks about defendants knew or should have known. Thank you, Mr. Williams. The history of at least 30 case reports, 50 plus adverse event reports with the FDA, as well as numerous reports from the company's own internal safety database. Now, that can only mean the defendant manufactures. That is not any indication of a knowledge of a convenience store or a guest or a. Well, I don't quite understand that. Because the allegation is that they had knowledge, actual or constructive, I suppose, of published reports. That's not an allegation that the manufacturer concealed the only relevant information. No, Your Honor. But if you go to paragraphs 146 and 147 of the complaint, the allegations there are that defendants were aware of these risks and failed to warn the plaintiffs or the public. And I would submit to you that plaintiffs or the public includes a gas station, a convenience store, and local drugstore. And that is exactly what Judge Rothstein held, which is consistent with three other federal district judges, one in Mississippi in the Lewis case. One of the differences being that we can't tell, one can't tell, at least I can't, from reading the Resolent opinion and the others that you refer to, that they had an allegation similar to 118. Your Honor, I think if you look at the Lewis case, which we cited in our brief, which is a southern district in Mississippi case. All you can do is look at a description of it. Yes, ma'am. But I think that those cases do set out the allegations, and most importantly, they set out the point that when a complaint alleges, on the one hand, collectively defendants knew or should have known, and then on the other, alleges that the defendants withheld this information from the public, that that could not, that language, that allegation could not apply. But how could the defendants possibly withhold published reports? I don't get that. Well, the published medical literature, if you read this, this allegation, that could not possibly mean or put a local convenience store on notice that he had a duty to study the published literature. Well, I mean, hey, I agree that that's a sensible conclusion, but that's not what's alleged in the complaint. And I would again submit that the cases we have cited to the court from various federal district judges around the United States on very similar complaints have made it very clear that on the one hand, when you want to allege a defendant's plural knew or should have known, and on the other hand, you allege that defendants withheld information, that that is not sufficient. Counsel, Mississippi Civil Procedure 8A only requires the complaint include a short and plain statement of the claim showing that the pleader is entitled to relief. Basically, I read this as notice pleading. Why isn't this sufficient? Your Honor, the plaintiff need not only plead a general statement, but we have seen cases to the court in which conclusionary allegations are not sufficient, particularly when you take it into the context of this complaint. You have to look at this complaint and the context of this complaint. When you have a complaint that alleges against 16 different manufacturers and 13 different retailers, conclusionary allegations such as that are not sufficient to overcome a motion to remand. There must be an additional What would be sufficient? What would be sufficient, if it could be created, which is very questionable under these facts and with these nondiverse defendants, would be some statement that, for example, the pharmacist that the drugstore had access to published medical literature or the gas station had access to. Well, anybody does. I mean, whether they accessed it is a different deal. But all you have to do is go on the Internet. I mean, that's as easy as pie. Your Honor, we have ‑‑ there are numerous cases that we have cited to the court, the Adams case, the TPS Uticom case, the Strong. Those all, like, involve a conspiracy or an element of the offense. And, sure, you can't just say defendants conspired. You've got to show something from which it can be inferred that they did, in fact, meet, agree, participate, whatever, in a common scheme. But here they've said knowledge. I don't know what else you do to get inside somebody's mind. Well, that is the problem. That is the problem with these general conclusionary allegations. And the law that we have cited has said in the context of these kind of complaints and particularly, particularly where Mississippi under Williams requires knowledge, that those kind of conclusionary allegations are not sufficient without some reference to a factual basis for those allegations. Just to sharpen the point a little bit, then, are all of the defendants, the local defendants, just convenience stores, or are there some pharmacy types? There are four nondiverse defendants. One is a gas station, one is a convenience store, and there are two local drug stores. That's what I thought. So yesterday I went into the Rite Aid here in Seattle, and if you're going in for some kind of medical or the kind of product that we're talking about here, wouldn't it be you might turn to the pharmacist behind the counter and say, what would be good for my problem with this cough or whatever? And wouldn't those pharmacists be in the chain of distribution where the drug supplier might be in contact with them and might reveal, say, hey, you know, one of the things you ought to be aware of, our company, we're getting the word from up top side, that this Alka-Seltzer cold medicine may, you know, may have some problems. Be a little careful if you ask to recommend. Now, whether that happened or not, I don't know. And a convenience store, sure, is 7-Eleven. But where you're in a drug store, where people actually go and often ask pharmacists for recommendations, it's not terribly far-fetched. So coming back to Judge Reimer's question, what – is that the kind of allegation you're saying Mississippi law for notice pleading requires them to speculate that, in fact, that really happened, or it's enough to base it on sort of common sense? Well, first of all, under Mississippi law, a pharmacist has no duty to warn of the – But may not have a duty. And second – I'm sorry. But may have been in the chain of the normal activity of supplier, how they get supplied. I think – Become aware of the reports or the rumors and so. I think it's more reasonable to believe that when you're dealing with the type of local drug stores we have in this case, and when you look at the fact that Alka-Seltzer Plus or any of these cold medicines are over-the-counter medicines and they're out in front of the pharmacy and away from the pharmacy. We don't know that. We don't know where they are. I'm simply saying from a – in responding to your hypothetical, I think it's more reasonable to look at it in that context and not just assume that the pharmacist would be giving this information. Furthermore – I'm not assuming that they would. I'm assuming that it's not improbable that they could have been. And so I'm trying to come back and put some flesh on your argument that conclusory allegations aren't enough. I'm trying to figure out what they should have done to somehow create a better pleading under notice pleading in Mississippi to satisfy even as to the two pharmacists. Well, they should have at least alleged some factual basis for the allegation that the defendants knew or should have known about the published medical literature. There should have been some additional factual allegation to that effect. That's what we believe should have been alleged. Notice pleading concept is a product of deciding that you put the defendant on notice and then you flesh out the details through discovery. And you're suggesting that somehow, because this is a product liability case in Mississippi, that you have to do more, you have to lay a certain foundation. Now, we know in the California case before you, this is another case, they've adopted some very specific rules about discovery and the like, the discovery rule in California. That's where they say you have to go beyond notice pleading, you have to put in facts to support why you avoid something. Does Mississippi have something comparable aside from this? No, Your Honor. But when you take this in context, and particularly, I would cite you again to the Raslin opinion when they talk about Mississippi law and to Lewis, where on the one hand there's an allegation such as this. On the other hand, there is an allegation that the defendants withheld that information from the plaintiff and others, plaintiff and the public. The goblement of this complaint is that the manufacturer had information and did not share it with anyone. Your Honor, if I may, Your Honor. One more question. The same one I asked to Mr. Williams, and that is, did you preserve any issue about procedural joinder? Thank you for raising that. I have that on my list. Absolutely. If you will look in our notice of remand, in our notice of remand in the record, paragraph 5, we specifically raised this issue of misjoinder. It was also raised in the plaintiff's motion to remand as an alternative of pleading. Judge Rothstein did not reach the issue of misjoinder. She didn't have to because she held that the manufacturer, that the non-deferred defendants were fraudulently joined. Okay. Thank you. Thank you, Your Honor. Okay. Mr. Sherman. If it pleases the Court, I have a minute and 22 seconds left, I think. So let me be brief. I want to answer three questions, one each of which you asked. Judge Reimer asked, was this, wasn't this inexcusable neglect? Judge Fisher asked, do we apply the Malone factors differently in a network or in different ways in an MDL? And Judge Nelson asked, what about available lesser remedies? First of all, it was not only inexcusable neglect. The excuse raised in the motion, in opposition to the motion to dismiss, was characterized by Judge Rothstein as bordering on, quote, rule 11 frivolity, close quote. That's in the record. That's in her decision. It's in the excerpt record, the excerpt from the record 248. Bordering on the frivolous. So the judge considered and made a finding that the disobedience of a court order was for an excuse that was groundless. In Malone, this court relied heavily on the fact, both for finding risk of prejudice and for finding strong factors weighing on expeditious litigation and on management of docket, that the excuse raised for disobedience was inexcusable. Now, Judge Fisher asked the question about an MDL. Yes, the Malone factors apply, but they apply with fuller force with respect to the first two criteria in an MDL context, with respect to expeditious litigation and with respect to management of docket. But cite the case, the one case or two cases that hold that. Well, I'm not sure there has been a case that holds that exactly, Your Honor. But I think we don't have to argue that it should, not that it does. It should. Thank you. I stand corrected. But I do say the Malone factors aren't different. We're not creating an exception. But when you apply them, you have to take into account what an MDL is. Briefly, an MDL is a funnel through which litigation is expedited. I think you can be pretty sure we understand what the purpose of an MDL is and your time has expired. I'm sorry I didn't get to Judge Nelson's question. It was consideration. If you want to ask a question. I would like him to answer if that's fine. That's fine. Thank you. The Ninth Circuit, as Your Honor knows, has not said the factor is lesser available remedies. It's consideration of lesser available remedies. Judge Rothstein considered it. And the reason for focusing on consideration and not just availability is to make sure the district court has weighed in the proper exercise of his or her discretion those lesser remedies. She did weigh them. That answers the question. Thank you. Thank you, Your Honor. As to these actual remedies? As to these, there was an order specifically with respect to the Anderson plaintiffs where she expressly addressed the Malone factors, including the lesser available remedies, and she found that the harshness of this remedy was warranted. Thank you. Okay. Mr. Wiggins. Thank you, Your Honor. In response to the question about whether all of the diverse defendants are convenience stores, paragraph 58 of the complaint refers to Fred's, Inc., a Tennessee corporation with its principal place of business in Tennessee, and Defendant Fred Subnatches, DBA Fred's, a Mississippi corporation. And there are several FIDAs who purchased at Fred's. Paragraph, I believe it's 62, refers to the Defendant Breland Drugstore, DBA Breland's Drugstore. So there are drugstores and larger retailers. These are not just all mom-and-pop operations. With respect to the question about the sufficiency of the allegations under Mississippi law, Mr. Tottenham referred to district court cases that construe Mississippi law. I think it is important to look to a case we cite in our brief, Duffin v. Honeywell. This case is a 2004 case by Judge Mills, who was a legislator in the Mississippi legislature when they passed the Products Liability Act. And he says at page 871 of the Duffin case, In contending that no reasonable possibility of recovery exists against the local retailers, defendants argue that Plaintiff's complaint contains only vague and conclusory allegations against these retailers, and that the complaint did not give these defendants sufficient notice of the claims against them. Defendants' use of alleged pleading defects as a basis for finding a fraudulent jointer is problematic. The Mississippi and federal rules only require the complaint make a short and concise statement of the claim. And so he found the complaint sufficient, even under the allegation, the same argument that's being made here, a vague and unclear statement. Thank you very much. Thank you, counsel, for your arguments. Helpful. And the matter just argued will be submitted. Court will stand in recess for the morning.
judges: D.W. Nelson, Rymer, Fisher